Circuit Court for Prince George's County
Case No. CAL 15-08368

Orphans' Court for Prince George's County
Estate No. 87911

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

Nos. 372 & 524

September Term, 2016

_____

IN THE ESTATE OF
HOWARD LEWIS VESS

_____

IN RE:  ESTATE OF HOWARD LEWIS VESS

_____

Meredith,
Arthur,
Leahy,

JJ.

_____

Opinion by Arthur, J.

_____

Filed:  September 28, 2017

Nearly six years ago, Claudia Vess commenced caveat proceedings in the Orphans' Court for Prince George's County. After several years of litigation, the orphans' court transmitted five issues to the circuit court for a jury trial.

Ms. Vess took a de novo appeal to the Circuit Court for Prince George's County. The circuit court ruled against her. Ms. Vess appealed from that judgment in *In the Matter of Estate of Howard Lewis Vess*, No. 372, Sept. Term 2016. For the reasons set forth in this opinion, we reject her challenge to the circuit court judgment and the underlying order to transmit issues.

After the circuit court entered judgment in the de novo appeal, the orphans' court entered an order "re-submitt[ing]" the issues for trial. In *Claudia Vess v. Robert Price, Jr.*, No. 524, Sept. Term 2016, Ms. Vess appealed directly to this Court from that orphans' court order. We also reject her challenge to that order.

The combined result of both determinations is that this case can finally proceed to a trial in the circuit court on the issues as framed by the orphans' court.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

A.      <u>The Last Will and Testament Dated August 11, 2006</u>

Howard Vess died on June 10, 2011, at the age of 89. He was a widower and had no children.

Mr. Vess's wife, Katherine, predeceased him in February 2006. Before her death, she had been the principal beneficiary of his two, prior wills.

About six months after his wife's death, Mr. Vess engaged an attorney to prepare a new will. That document is titled "Last Will and Testament of Howard L. Vess" and

dated August 11, 2006.

Mr. Vess's 2006 will revoked all of his prior wills and codicils. He made one specific legacy in the amount of $10 to his brother, provided that he survived Mr. Vess. The only other gift provision was a residuary clause, in which Mr. Vess devised the remainder of the estate to his "good friend, ROBERT V. PRICE, JR., or his issue." The 2006 will named Mr. Price as personal representative, and named Mr. Price's wife as a substitute personal representative.[1]

Mr. Vess's brother died in 2009. He had three surviving children: Claudia, Brian, and Debra.

A few weeks after Mr. Vess's death in 2011, Mr. Price filed a probate petition with the Register of Wills for Prince George's County. He requested administrative probate of the will dated August 11, 2006. He listed Claudia Vess as an interested person and identified her as Mr. Vess's surviving niece and a potential heir.

The Register of Wills granted Mr. Price's request that he be appointed as personal representative of the estate. In addition, the Register docketed the two prior wills and two prior codicils, each of which had been filed with the Register for safekeeping.[2]

---

[1] In both of his prior wills, Mr. Vess had designated Mr. Price as his personal representative if his wife predeceased him. In a 1995 codicil to his second will, Mr. Vess bequeathed his gun collection and his woodworking equipment to Mr. Price and Dr. Hampton Sue, to be divided equally between them, if his wife predeceased him.

[2] Mr. Price is no longer the personal representative. The orphans' court removed him from his appointment in November 2014. That ruling is not at issue on appeal.

**B.** **Claudia Vess's Petition to Caveat the 2006 Will**

On December 28, 2011, Howard Vess's niece, Claudia Vess, filed a petition to caveat in the Orphans' Court for Prince George's County. She requested that the 2006 will be declared invalid and that "any previous will be declared valid." She asserted that her interest in the estate was "based on any previous will executed by [Mr. Vess] or by intestacy."

In the caveat petition, Ms. Vess asserted that the document dated August 11, 2006, was not Mr. Vess's last will and testament. Her petition alleged: that Mr. Vess lacked testamentary capacity and was not of sound and disposing mind at the time of execution; that the instrument was not executed and witnessed properly; that the signature on the document was not Mr. Vess's signature; that the instrument was procured by fraud; and that the instrument was procured by the exercise of undue influence of Mr. Price, who allegedly maintained a confidential relationship with Mr. Vess. Although Ms. Vess did not include the allegation in her petition, her other submissions assert that Mr. Price established a confidential relationship with Mr. Vess by serving as his financial advisor.

The caveat petition included a request that Mr. Price "be required to answer" the petition. Maryland Rule 6-432(a) states that, within five days after the filing of a petition to caveat, the register of wills must "issue an Order to Answer requiring the personal representative . . . to respond to the petition to caveat within 20 days after service[.]" Rule 6-432(b) requires the register of wills to serve that order and the caveat petition on the personal representative. In this case, the register did not issue such an order within that time period.

Nevertheless, on the twentieth day after Ms. Vess had filed her petition, Mr. Price responded by filing a motion to dismiss the petition based on lack of standing. Mr. Price contended that Ms. Vess would have no direct interest in the estate even if she succeeded in invalidating the 2006 will. He informed the court that Ms. Vess was not a legatee under the several prior wills and codicils and that she would be entitled to receive estate property through intestate succession only if she successfully invalidated each of those instruments, which she had not attempted to do. He argued that, absent some basis for invalidating the prior wills, Ms. Vess's interest in the estate was too remote to allow her to pursue the caveat.

In her response to the motion, Ms. Vess stated that she was "only seeking to ensure her uncle's wishes are honored fully, whether or not she receives any gain for herself arising out of . . . her possible heir status." She argued that her interest "based by intestacy should provide sufficient standing" to caveat the will.

In April 2012, several months after the filing of the petition, the Register of Wills issued notice of the caveat petition to Mr. Price, as an interested person. The notice stated that, if Mr. Price wished to respond to the caveat petition, he was required to do so "within 20 days after service of this notice[.]" The Register also issued an Order to Answer to Mr. Price, instructing him, as the personal representative, to "respond to the petition to caveat no later than 20 days after service." Mr. Price did not file an additional response to the caveat petition at that time, because he had already responded through his motion to dismiss.

After a hearing, the orphans' court dismissed the caveat petition, concluding that

4

Ms. Vess lacked standing to challenge the 2006 will. The court reasoned that, if Ms. Vess prevailed in the caveat proceedings, the prior wills would be offered for probate, but that she would receive nothing under either of those wills. The court noted that Ms. Vess had raised no question as to the validity of the prior wills.

Ms. Vess took a de novo appeal to the circuit court. The circuit court reversed the dismissal of the caveat petition and remanded the case to the orphans' court. In its opinion, the circuit court reasoned that, even though Ms. Vess had only a "slight chance to inherit" by invalidating each of the successive wills, her status as an heir-at-law was itself a sufficient interest for her to pursue the caveat proceeding. Although Mr. Price could have appealed from the circuit court's judgment to this Court, he did not do so.[3]

_____

[3] The circuit court based its conclusion on the general proposition that "'any person having an interest in the property of a testator, in the event that the will is annulled, has the right to caveat [the] will, whether his interest arises from his relationship to the decedent, as in the case of an heir, or is acquired under the provisions of a prior will.'" *Yingling v. Smith*, 254 Md. 366, 368 (1969) (quoting Philip L. Sykes, *Contest of Wills in Maryland* § 4, at 5 (1941)). In addition, the circuit court cited *Hamill v. Hamill*, 162 Md. 159 (1932), and *Associated Professors of Loyola College v. Stuart*, 179 Md. 96 (1940), which hold that a party who has successive interests in the estate, both as an heir and as a legatee under a prior will, may contest a later will without "electing" to proceed under one of those two interests. None of those cases (and no other Maryland case cited by the court) holds that an heir has standing to caveat a later will even where she has conceded the validity of prior wills under which she would receive nothing. By contrast, in *Fry v. Yeatman*, 207 Md. 379, 386-87 (1955), the Court of Appeals held that an orphans' court did not err in dismissing a petition to caveat where the caveator could establish an interest in the decedent's estate only if he succeeded in invalidating his parents' will, which he had not undertaken to do. Before oral argument, this Court requested additional briefing on whether Ms. Vess has a sufficient interest to caveat the 2006 will. Although an appellate court may sometimes decide an issue of standing on its own motion (*e.g.*, *Peterson v. Orphans' Court for Queen Anne's Cnty.*, 160 Md. App. 137, 172 (2004)), we have decided not to do so here, as the record does not appear to include all materials from the earlier appeal. Our decision does not preclude

5

## C.     The Petition to Transmit Issues

After the case returned to the orphans' court, the court held a hearing in October 2013 on the status of the caveat proceedings.  In open court, Ms. Vess and Mr. Price submitted a joint petition asking the orphans' court to transmit five issues to the circuit court for a jury trial: (a) whether Howard Vess was competent to make the 2006 will; (b) whether the will was procured by the exercise of undue influence; (c) whether the testator's signature on the will was genuine; (d) whether the will was attested and signed by two credible witnesses in his presence; and (e) whether the will was procured by fraud.  The orphans' court filed a hearing sheet, which stated that the joint petition had been "granted" and that the judge intended "to prepare [an] order" to transmit issues.

Two months later, however, before the court finalized the written order to transmit issues, Ms. Vess filed a line in the orphans' court withdrawing her support for the joint petition.  For the first time, she complained that Mr. Price had never filed a formal "answer" denying the allegations of her petition.  She contended that "[t]ransmission of the issues first requires an *answer* to the Petition to Caveat which establishes the existence of a factual controversy."

Immediately upon learning of Ms. Vess's attempt to withdraw her support for the joint petition (and, in fact, two days before she filed the line with the orphans' court), Mr. Price filed a formal answer to the caveat petition.  In addition to denying specific allegations, he represented: that the 2006 will was executed properly by Mr. Vess and

Mr. Price from re-asserting his standing challenge in the circuit court as a potential alternative ground for his defense in the caveat proceeding.

6

attested by two witnesses, that Mr. Vess had the requisite testamentary capacity at the time the will was executed, and that the will had not been procured by fraud or undue influence. Mr. Price signed a statement verifying the contents of his answer under penalty of perjury.

### D. The "Order of Default" in the Caveat Proceeding

Soon after Mr. Price filed his answer, Ms. Vess moved to strike it on the ground that it was untimely. She contended that Mr. Price was required by Rule 6-122(b) to file "[a]ny response" to the caveat petition "within 20 days after service" of the petition. She argued that entry of an order of default would be "appropriate" upon the striking of Mr. Price's answer.

Recognizing that the Maryland Rules do not authorize an orphans' court to render judgment by default, Ms. Vess asked the orphans' court to apply the rules that govern pleadings in civil cases before the circuit court. Ms. Vess relied on Rule 6-461, which makes certain Title 2 rules applicable in the orphans' court and permits the orphans' court to "apply other rules" from Title 2 "on petition of a party . . . and after notice to all persons who may be affected by the proceeding and an opportunity to be heard[.]" Md. Rule 6-461(d). Specifically, Ms. Vess requested that the orphans' court apply Rule 2-613(b), which authorizes the circuit court to "enter an order of default" where "the time for pleading has expired and a defendant has failed to plead[.]"

Mr. Price opposed the motion, arguing primarily that Rule 2-613 did not apply to proceedings in the orphans' court. In fact, at the time of the motion, Mr. Price was no longer in "default," because he had filed an answer two months earlier. Rule 2-613

7

includes no provision authorizing the court to strike a pleading so as to create a default.

Nonetheless, the orphans' court granted Ms. Vess's motion without a hearing, struck Mr. Price's answer, and directed that an "order of default" be entered against him, subject to his right to move to vacate the "order of default" within 30 days after its entry.

Although Mr. Price continued to argue that Rule 2-613 did not apply, he made a timely motion to vacate the "order of default." He argued that the untimeliness of his answer should be excused under the circumstances and that the record demonstrated "a substantial and sufficient basis for an actual controversy as to the merits of the action" under Rule 2-613(e). In support, he relied on the verified answer that he had filed before the "order of default" was even entered, the discovery requests and responses that the parties had exchanged,[4] and the parties' agreement to submit a joint petition for issues, to which he pointed as "an acknowledgement" by Ms. Vess that those issues were contested. He argued that the will was "presumptively valid" because it had an attestation clause and that Ms. Vess would bear the burden of proving otherwise. He asked the court to vacate the "order of default," to accept his answer for filing, and to transmit the contested issues to the circuit court for trial.

At a hearing on October 22, 2014, the orphans' court granted Mr. Price's motion to vacate the "order of default." At the court's direction, the Register of Wills made a docket entry stating that the orphans' court had granted the motion and that the court

---

[4] Despite the absence of an answer to help define the issues, Ms. Vess had managed to respond to discovery requests and had sent her own discovery requests to Mr. Price.

8

would prepare an order to transmit issues. On the same day, the court entered a written order transmitting five issues to the circuit court. The issues were the same issues that the parties originally framed in the joint petition.

### E.    Ms. Vess's Post-Judgment Revisory Motion to the Orphans' Court

Although Ms. Vess had the right to appeal the order transmitting issues (*see, e.g.*, *Hegmon v. Novak*, 130 Md. App. 703, 711 (2000)) either to this Court[5] or to the circuit court,[6] she did not do so. Instead, she filed a post-judgment motion, in which she asked the orphans' court to exercise its revisory powers under Maryland Rules 2-534 and 2-535, which apply to "a final order" of an orphans' court. *See* Md. Rule 6-461(d). She argued that the order was fully subject to revision because the judgment had "los[t] its finality upon the filing of the . . . Motion pursuant to Rule 2-534 and/or 2-535 within 10 days" after the entry of the judgment.

The orphans' court, however, did not receive Ms. Vess's motion by Monday, November 3, 2014, the tenth day after the entry of its judgment.[7] The Register of Wills stamped the document to indicate that it was received on November 6, 2014, and made a docket entry noting that the document had been filed on November 6, 2014.

---

[5] Md. Code (1974, 2013 Repl. Vol.), § 12-501 of the Courts and Judicial Proceedings Article.

[6] Md. Code (1974, 2013 Repl. Vol.), § 12-502 of the Courts and Judicial Proceedings Article.

[7] Monday, November 3, 2014, was actually the twelfth calendar day after the entry of the judgment. But because the tenth calendar day had fallen on a Saturday, November 1, 2014, the 10-day deadline was extended until the following Monday. Md. Rule 1-203(a)(1); *see also* Md. Rule 6-106.

Ms. Vess's post-judgment motion included what she characterized as an "alternative motion" to amend the issues. She cited Rule 6-434(d), which authorizes the orphans' court, "[u]pon petition," to "amend, supplement or modify issues previously transmitted to a circuit court." The court had transmitted two questions asking, respectively, whether the 2006 will had been procured by fraud or undue influence. Ms. Vess asked the court to modify the questions to ask whether the will was partially invalid on those grounds.

On January 12, 2015, the orphans' court entered an order denying Ms. Vess's post-judgment motion "in whole[.]" Thirty days after the entry of that order, Ms. Vess filed a notice of de novo appeal to the circuit court.

### F. De Novo Appeal in Circuit Court from the Order to Transmit Issues

After the circuit court received the record from the orphans' court, Mr. Price filed what he called a "Motion for Summary Judgment" in the circuit court. In essence, he argued that the order transmitting issues was correct and that the circuit court should uphold the judgment on the merits.

In addition to his main argument on the merits, Mr. Price asserted that Ms. Vess had failed to note a timely appeal from the order to transmit issues. He observed that Ms. Vess had not filed a notice of appeal within 30 days after the orphans' court entered that order on October 22, 2014. He argued that, although a revisory motion filed within 10 days of the date of judgment may extend the time for noting an appeal, Ms. Vess had not filed her motion within that 10-day period. He relied on the docket entry showing that Ms. Vess had filed her post-judgment motion on November 6, 2014, 15 calendar days

10

after the entry of judgment. On that basis, he contended that "the appeal must be dismissed" by the circuit court.

In response, Ms. Vess argued that her appeal was timely as to the order to transmit issues. She claimed that her attorney "filed the Motion to Alter or Amend" with the orphans' court "on November 3, 2014 by placing the Motion in the overnight box of the Circuit Court." She submitted a separate motion to the circuit court, styled as a "Motion to Correct Estate Docket."

During a hearing on the dispositive motion, Ms. Vess's attorney offered a billing record indicating that he had submitted the post-judgment motion on the night of November 3, 2014. He believed that the original version of the motion had a time-stamp from the circuit court, but the stamp was not visible on the copies sent from the orphans' court as part of the de novo appeal.

The hearing judge stated that he was familiar with the circuit court's night box, which he described as "a wooden box in the commissioner's office where pleadings can be deposited after hours[.]" The judge stated that he was unaware that the orphans' court used a night box. In response, Ms. Vess's attorney claimed that a circuit court employee "generally" separates the circuit court filings from the orphans' court filings and does something (it is not clear what) to ensure that the orphans' court filings "get" to the orphans' court.

The circuit court concluded that the docket entries were "presumptively correct" and that those entries were "dispositive evidence" of the filing date of November 6, 2014. The court reasoned that the presumption of correctness could not be rebutted by

11

presenting a "lawyer's bill for the time spent going on the date to file it." The court announced that it would grant Mr. Price's "motion for summary judgment" and that the "whole appeal" would be "dismissed." The court denied all other pending motions, including the motion to correct the estate docket, on the ground that they were "moot."

In her written opposition, Ms. Vess had argued that, even if her motion to alter or amend was not timely, her post-judgment motion had included timely "alternative motions" to revise the judgment under Rule 2-535(a) and to amend the issues previously transmitted under Rule 6-434(d). She argued that her appeal was timely at least as to the denial of those motions and, therefore, that the circuit court had the authority to reconsider the underlying orphans' court orders.

After the court announced during the hearing that it was "dismissing everything," counsel for Ms. Vess asserted that her appeal was "still viable" as to the petition to amend the issues that were to be transmitted. Her attorney did not, however, elaborate on why he believed that the issues needed to be amended. The circuit court said that it would consider those other matters if Ms. Vess raised them in a timely motion.

On November 10, 2015, the circuit court entered a written order granting Mr. Price's "Motion for Summary Judgment" and remanding the matter "to the Orphans' Court to certify and send issues to [the circuit court] as framed by Order of Orphans' Court dated October 22, 2014." The court also entered a separate order denying Ms. Vess's motion to correct the estate docket as "moot."

### G.     The Motion for Reconsideration in the Circuit Court

Within 10 days after the circuit court entered judgment in favor of Mr. Price, Ms.

12

Vess moved to "alter, amend, revise and/or reconsider" the judgment. She asked the court to reconsider the conclusion that she had failed to file a post-judgment motion within 10 days after the orphans' court entered the order to transmit issues.

Ms. Vess offered additional evidence that she had filed her post-judgment motion on the night of November 3, 2014. The evidence consisted of images of the original versions of her post-judgment motion, along with affidavits to authenticate those images.

The images showed that the document had been stamped three times. The first stamp, from the Clerk of the Circuit Court for Prince George's County, reads: "2014 NOV 3 PM 8:32." The second stamp marks the document as "FILED" with the clerk of the circuit court on "NOV 3 2014." The third stamp marks the document as "FILED" on "NOV 06 2014" with the Register of Wills for Prince George's County. Ms. Vess argued that the first stamp proved that the document had been filed "in the 'night box' in the Courthouse" at "8:32 p.m. on November 3, 2014."

The circuit court held a hearing on the motion for reconsideration. After examining the images, the court concluded that the document "was received in the Circuit Court's box at 8:32 p.m., on November 3rd." The court commented that the motion "certainly would have been timely" if it had been "a filing in the Circuit Court[.]" The court explained, however, that the document "need[ed] to be filed with the Register of Wills, the Orphans' Court, not with the Circuit Court[.]" Therefore, the court upheld its determination that Ms. Vess did not file the post-judgment motion with the orphans' court until the register of wills received it on November 6, 2014.

Separately, Ms. Vess argued that her appeal had been timely from the orphans'

13

court's denial of her "alternative motion" to amend the issues to include questions about partial invalidation of the 2006 will. She argued that her request to amend the issues under Md. Rule 6-434(d) was not subject to the 10-day deadline for filing a motion to alter or amend the judgment under Md. Rule 2-534. The circuit court agreed that her petition to amend the issues had been timely under Rule 6-434(d).[8] But after Ms. Vess conceded that the decision to allow the amendment was discretionary, the judge ruled that amending the issues was not "necessary or appropriate under all of these circumstances."

On April 12, 2016, the circuit court entered an order denying Ms. Vess's motion for reconsideration. The order reiterated that the case was remanded to the orphans' court for that court to transmit issues for trial.

## H.      Notices of Appeal in the Circuit Court and in the Orphans' Court

On April 18, 2016, the circuit court's civil coordinating judge signed an order directing the orphans' court to "immediately frame the issues" for trial. The order stated that the case needed to be "returned to [the circuit] court promptly for trial" beginning on October 3, 2016, a little less than six months from the date of the order. The order was docketed on April 21, 2016.

The orphans' court evidently received the order from the circuit court's civil coordinating judge even before it was docketed: on April 20, 2016, the orphans' court entered another order stating that the same five issues from the October 22, 2014, order to

---

[8] Rule 6-434(d) does not specify a time period for filing a petition to amend previously transmitted issues. It requires parties to obtain leave from the circuit court if the orphans' court amends issues within 15 days of the scheduled trial date.

transmit issues were being "re-submitted for trial."

On April 28, 2016, Ms. Vess filed a notice of appeal from the circuit court to the Court of Special Appeals. Her notice identified three circuit court orders for review: the order granting judgment in favor of Mr. Price; the order denying Ms. Vess's motion for reconsideration; and the subsequent order issued by the civil coordinating judge. That appeal is now before this Court as *In the Estate of Howard Lewis Vess*, No. 372, Sept. Term 2016.

On the same day that she filed her notice of appeal in the circuit court, Ms. Vess filed a line in the orphans' court, notifying that court of the appeal that she had noted in the circuit court. Shortly thereafter, Ms. Vess filed an additional notice of appeal from the orphans' court directly to the Court of Special Appeals. Her notice stated that she was appealing from the orphans' court order that "re-submitted" five issues to the circuit court for trial. That notice gave rise to a separate appeal: *Claudia Vess v. Robert V. Price, Jr.*, No. 524, Sept. Term 2016.

Ms. Vess moved to consolidate the two related appeals. This Court denied her motion, but scheduled both cases for argument on the same day. Although these cases are not consolidated, we have issued this joint opinion to avoid duplication of our summary of the extensive procedural background of these two appeals.

### *IN THE ESTATE OF HOWARD LEWIS VESS*, NO. 372, SEPT. TERM 2016

The first appeal comes to this Court from the final judgment of the circuit court in the de novo appeal from the orphans' court. Based on its conclusion that Ms. Vess's notice of appeal was untimely as to the order to transmit issues, the court announced that

15

it was "dismissing" the de novo appeal, granted what it called "summary judgment" in favor of Mr. Price, and remanded the case to the orphans' court.

In her appeal from that judgment, Ms. Vess presents two questions. Her first question concerns the circuit court's ruling in her de novo appeal:

> 1.     Did the circuit court err as a matter of law or abuse its discretion when it granted Price's motion for summary judgment, thereby disposing of [Ms. Vess's] entire appeal, and then refused to reconsider its earlier Order?

For the reasons discussed below, the answer to first questions is: No. We affirm the circuit court's judgment of November 10, 2015, and the order denying the motion for reconsideration of that judgment on April 12, 2016.

The second question relates to the propriety of the order issued by the civil coordinating judge a week after the denial of reconsideration. Ms. Vess asks:

> 2.     Did the Circuit Court abuse its discretion or err as a matter of law when it scheduled a non-jury trial to begin on October 3, 2016, and then further directed the Orphans' Court to "immediately" frame the issues for the trial scheduled on that date, thereby making it practically impossible to exercise a right of appeal that is conferred by statute?

There is no need to answer the second question, because the record shows it is moot. The appeal is dismissed under Rule 8-602(a)(10) to the extent that it challenges the civil coordinating judge's order, which was signed on April 18, 2016, and docketed on April 21, 2016.

## I.    Judgment of the Circuit Court in the De Novo Appeal

Generally, parties have two alternative methods to obtain appellate review of a final judgment of an orphans' court. *See* Md. Rule 6-463. A party may appeal from the final judgment of an orphans' court directly to the Court of Special Appeals. Md. Code

16

(1974, 2013 Repl. Vol.), § 12-501(a) of the Courts and Judicial Proceedings Article ("CJP"). Or a party may appeal from the orphans' court to the circuit court for that county, except in Harford County and Montgomery County, where the circuit court sits as the orphans' court. CJP § 12-502(a)(1)(i).

Here, the orphans' court entered an appealable, final judgment on October 22, 2014, the date that the Register of Wills docketed the order transmitting issues to the circuit court for a jury trial. *See Kao v. Hsai*, 309 Md. 366, 372 n.4 (1987); *Banashak v. Wittstadt*, 167 Md. App. 627, 685-88 (2006); *Hegmon v. Novak*, 130 Md. App. at 709.

Ms. Vess could have secured appellate review of that judgment in this Court by filing a notice of appeal with the register of wills within 30 days after the entry of the orphans' court's judgment. *See* Md. Rule 8-202(a). Alternatively, she could have secured review in the circuit court by filing a notice of appeal with the register of wills during that period. *See* Md. Rule 7-503(a). But she did not file a notice of appeal to either court within 30 days after October 22, 2014. Instead, within that 30-day period, Ms. Vess made the motion styled as a motion to "Alter, Amend, Revise, and/or Reconsider Order Transmitting Issues" pursuant to Rules 2-534 and 2-535.

When a party files a Rule 2-534 motion to alter or amend within 10 days after the entry of judgment, Maryland Rule 8-202(c) extends the time period for noting an appeal *to this Court* until 30 days after the motion is withdrawn or decided. Rule 8-202(c) also extends the time period for noting an appeal *to this Court* when a party files a revisory motion under Rule 2-535 within 10 days after entry of judgment. *See* Committee Note to Rule 8-202(c); *Alitalia Linee Aeree Italiane v. Tornillo*, 320 Md. 192, 200 (1990). The

17

courts sometimes say that a timely, 10-day post-judgment motion causes the judgment to "lose its finality" for purposes of appeal. *See, e.g.*, *Green v. Hutchinson*, 158 Md. App. 168, 171 (2004).

By its own terms, however, Rule 8-202(c) changes the time for noting an appeal only when a party files a "timely motion." A motion styled as a motion to alter or amend a judgment under Rule 2-534, if filed more than 10 days after entry of judgment, does not stay the time period for noting an appeal to this Court. *See, e.g.*, *Blake v. Blake*, 341 Md. 326, 331 (1996); *Pickett v. Noba, Inc.*, 122 Md. App. 566, 570 (1998).

Rules 2-534 and 2-535, which govern post-judgment revisory motions in the circuit court, also apply to a "final order" of an orphans' court. *See* Md. Rule 6-461(c). Rule 6-461(c) "transport[s] the tolling effect of those two rules, under Rule 8-202(c), to appeals *to this Court* from final judgments of the orphans' court." *Edery v. Edery*, 213 Md. App. 369, 383 (2013) (emphasis added).

But Title 8 of the Maryland Rules, including Rule 8-202(c), applies only to "appellate procedure in the Court of Appeals and the Court of Special Appeals." Md. Rule 8-101. Rule 8-202(c), therefore, does not apply to appeals from an orphans' court *to a circuit court*. The rules governing appeals from an orphans' court *to a circuit court* are found in Title 7, Chapter 5, of the Maryland Rules, which first took effect in 2008. *See* Md. Rule 7-501 ("[t]he rules in this Chapter govern appeals to a circuit court from a judgment or order of an orphans' court").

Rule 7-502(a) provides that review in the circuit court of a judgment or order of the orphans' court "may be obtained *only if* a notice of appeal is filed with the Register of

18

Wills within the time prescribed in Rule 7-503." (Emphasis added.)  Unlike Rule 8-202(c), Rule 7-503, which governs the timing of de novo appeals from the orphans' court *to the circuit court*, does not extend the deadline until the withdrawal or disposition of a timely, post-judgment motion:

> **(a) Generally.** Except as otherwise provided in this Rule or by law, the notice of appeal shall be filed within 30 days after entry pursuant to Rule 6-171 of the judgment or order from which the appeal is taken.

> **(b) Appeals by Other Party.** If one party files a timely notice of appeal, any other party may file a notice of appeal within 10 days after the date on which the first notice of appeal was served or within 30 days after entry of the judgment or order from which the appeal is taken, whichever is later.

Consequently, in de novo appeals from an orphans' court *to a circuit court*, such as Ms. Vess's appeal from the orphans' court order that transmitted issues and struck the "order of default," the filing of a post-judgment motion within 10 days of the judgment does *not* extend the time for taking an appeal.

In light of Rule 7-503, it does not matter whether Ms. Vess filed her post-judgment motion within 10 days of the judgment or more than 10 days after the judgment – i.e., it does not matter whether Ms. Vess is deemed to have filed her post-judgment motion with the orphans' court by putting it in the circuit court's night deposit box on the evening of the tenth day, or whether she is not deemed to have filed the motion until the orphans' court actually received it three days later.  Even a timely, 10-day post-judgment motion does not extend the 30-day deadline for noting an appeal from the orphans' court *to a circuit court*.  *See* Md. Rule 7-503.  Therefore, Ms. Vess's post-judgment motion had no effect whatsoever on her 30-day deadline for filing an appeal *to the circuit court*.

19

Because Ms. Vess did not appeal to the circuit court until well over 30 days after the entry of the judgment in which the orphans' court transmitted issues and struck the "order of default," her appeal was not timely as to the merits of that judgment. *See* Md. Rule 7-503(a).

The result would not change even if we assumed that when a party files a timely motion to alter or amend an orphans' court's judgment, Rule 8-202(c) somehow operates to delay the time period for noting a de novo appeal not only to this Court, but to the circuit court as well.

Ms. Vess contends that she "filed" her post-judgment motion with the orphans' court by delivering it to the circuit court's night deposit box on the evening of November 3, 2014. She contends that the circuit court erred in concluding that she did not "file" her post-judgment motion with the orphans' court until Thursday, November 6, 2014, and consequently that her motion did not extend the deadline for noting an appeal from the order to transmit issues.

The ultimate determination of when a document is deemed to be "filed" under a rule or statute is a conclusion of law that is subject to de novo review. *See In re Vy N.*, 131 Md. App. 479, 482 (2000); *see also Molé v. Jutton*, 381 Md. 27, 35 (2004). Where the court looks outside the docket entries and considers other evidence about the circumstances of the filing, the court's factual findings about the delivery of the document are entitled to deference on appeal unless those findings are clearly erroneous. *See In re Vy N.*, 131 Md. App. at 482 (deferring to district court's factual findings about time of delivery of juvenile delinquency petitions).

20

"'In modern usage, the "filing" of a paper consists in placing it in the custody of the proper official who makes the proper indorsement thereon.'" *Cherry v. Seymour Bros.*, 306 Md. 84, 92 (1986) (quoting *Levy v. Glens Falls Indem. Co.*, 210 Md. 265, 273 (1956)). "'[A] paper is said to be "filed" when it is delivered to the proper officer and received by him [or her] to be kept on file.'" *Id.* at 92 (quoting *Levy v. Glens Falls Indem. Co.*, 210 Md. at 273). "'The date that a pleading or paper is "filed" is the date that the clerk receives it.'" *Bond v. Slavin*, 157 Md. App. 340, 351 (2004) (quoting Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 47 (3d ed. 2003)). "'A pleading or paper is filed by *actual delivery* to the clerk.'" *Id.* (quoting Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary*, *supra*, at 47); *Lovero v. Da Silva*, 200 Md. App. 433, 442 (2011); *Cave v. Elliott*, 190 Md. App. 65, 75 (2010).

Maryland Rule 1-322(a), which governs the filing of an item with a court, provides that "[o]n the same day that an item is received in a clerk's office," the clerk must "note on it that date it was received and enter on the docket that date[.]" The paper is "deemed filed on . . . the date noted by the clerk on the item." *Id.* This Rule "requires that, to be filed, pleadings and papers must be actually delivered, either in person or by mail, to the clerk or a judge of the court in which they are sought to be filed." *Blundon v. Taylor*, 364 Md. 1, 11 (2001).[9]

As Mr. Price points out, Rule 1-322(a) does not strictly apply in proceedings before the orphans' court. *See* Md. Rule 1-101(a) (providing that Title 1 of the Maryland

---

[9] Rule 1-322(a) also permits an individual judge to accept an item for filing. That procedure is not at issue here.

Rules applies to all courts in this State except the orphans' courts). But although there is no equivalent rule in Title 6 for the filing of items in the orphans' court, Ms. Vess argues that cases interpreting Rule 1-322(a) should guide the determination of when an item is "filed" with the orphans' court.

We agree that those authorities provide guidance here. The relevant "filing" requirement comes from Rule 2-534, a rule governing motions to the circuit court, which is then made applicable in the orphans' court. The determination of when a motion to the orphans' court is "filed" under Rule 2-534 should be largely consistent with the determination of when such a motion is filed with the circuit court under that Rule. The main difference is that, in the orphans' court, the register of wills takes the place of the "clerk" of the court. *See* Md. Rule 6-105(b) ("'Clerk' when used in any rule incorporated by reference into this Title means the register of wills"). Thus, in general, a motion under Rule 2-534 is "filed" with the orphans' court on the day when it is actually received by or delivered to the register of wills.

In the vast majority of cases, there are no disputes about when a particular document has been filed with the court, because the docket entries of the clerical staff create a public record of the filing date, so that all parties may rely on those docket entries. "Docket entries are made under the eye of the court, and by its authority, and are presumed to be true until corrected." *Mateen v. Saar*, 376 Md. 385, 396-97 (2003) (citations and quotation marks omitted). The Maryland appellate courts "have consistently held that docket entries are presumptively correct, and will be considered dispositive evidence of when a paper was filed in court[.]" *Estime v. King*, 196 Md. App.

22

296, 304 (2010) (citing *Waller v. Maryland Nat'l Bank*, 332 Md. 375, 379 (1993); *Lawson v. State*, 187 Md. App. 101, 108 (2009); *Shade v. State*, 18 Md. App. 407, 411 (1973)); *see also Brethren Mut. Ins. Co. v. Suchoza*, 212 Md. App. 43, 62 n.10 (2013) ("[i]n the absence of a court order changing the filing date . . . , we must accept the date of filing as the one entered in the docket entries"). This presumption of correctness can be overcome if the docket entry conflicts with a transcript of court proceedings, but where "the rules rely upon the form and date of the docket entry to establish the finality and date of finality of an order, the docket entry will control" unless and until it is corrected. *Estime*, 196 Md. App. at 305 (citing *Waller*, 332 Md. at 379).

The circuit court expressly relied on *Estime* when it reasoned that the docket entry was "presumptively correct and considered to be dispositive evidence" that Ms. Vess had filed her post-judgment motion in the orphans' court on November 6, 2014. The court commented that it "would completely eviscerate the purpose of docket entries" if a party could override the docket entry simply by proffering a "lawyer's bill for time spent going on the date to file it."

We see no error in the circuit court's analysis. Although *Estime* and other cases discuss the presumption of correctness for docket entries of other courts, the registers of wills have a duty to "keep a proper docket showing . . . a short entry of every paper filed in the court and every order of the court or the register, setting forth the nature of the order or paper." Md. Code (1974, 2011 Repl. Vol.), § 2-208(d) of the Estates and Trusts Article. Furthermore, the estate docket should be "similar in every respect to the dockets required to be kept in the offices of the equity courts." *Id.*

23

Ms. Vess contends that docket entries made by the register of wills are not entitled to any presumption of correctness. The only authority she cites in support of that assertion is *Anthony v. Clark*, 335 Md. 579 (1994).

As part of its opinion in that case, the Court of Appeals addressed a dispute about the date of entry of an orphans' court's judgment. The orphans' court had granted a motion to dismiss a caveat petition, and the docket entry from the same date read: "'Motion to dismiss petition to caveat and order.'" *Id.* at 584. The Court of Appeals rejected the argument (*id.* at 588-89) that the register of wills had failed to make a proper record of that judgment under Rule 6-171(b), which requires that the register of wills "enter an order or judgment by making a record of it in writing" in the docket. The Court of Appeals concluded that Rule 6-171(b) was "not intended to be interpreted identically" to the rule governing entry of judgments in the circuit court. *Anthony v. Clark*, 335 Md. at 592-93. The Court held that Rule 6-171(b) "simply requires that it be noted on the docket in an orphans' court that an order has been filed relative to some previously filed paper; the register need not describe on the docket the orphans' court action reflected in the order." *Anthony v. Clark*, 335 Md. at 593.

In the final paragraph of its analysis, the Court explained a policy rationale for its interpretation of that Rule:

> With but a handful of exceptions, orphans' court judges are lay persons who serve part time in their judicial capacities. They cannot be expected to supervise the clerical staffs of the registers of wills in digesting or describing orders. Furthermore, the registers of wills' clerical personnel do not have the same opportunity or necessity for acquiring that skill. There ordinarily are no oral orders in orphans' court – orphans' court rulings usually are not dictated to a court reporter. There are no jury verdicts

24

announced in open court, which must be interpreted and then noted on the docket. Instead, in orphans' courts, an order is a paper writing that is filed in the estate file. Rule 6-171 contemplates that interested persons will read that writing. The purpose of the docket is simply to alert the interested person that an order has been filed.

*Id.* at 594.

While acknowledging that this passage "refers specifically" to the docketing of orphans' court orders, Ms. Vess theorizes that "the [C]ourt's reasoning would appear to have broader application." She suggests that *Anthony v. Clark* creates a "diminished expectation of accuracy" for the estate docket. Her suggestion is unpersuasive.

The Court's analysis in *Anthony v. Clark* does not address the "accuracy" of the docket entries; it addresses the "specificity" (*id.* at 593) of the docket entries. The Court's concerns about the ability of the clerical staffs of the registers of wills "to digest and then to reproduce on the docket" the content of court rulings (*id.* at 593-94) are not implicated in the task of marking the date that a document is received and recording that date. In this case, the circuit court did not err when it concluded that the orphans' court's docket entry for Ms. Vess's post-judgment motion was presumptively correct as evidence of the filing date of November 6, 2014.

In any event, during the hearing on reconsideration, the circuit court gave an additional rationale (independent of the docket entry) for its determination of the filing date. At that hearing Ms. Vess presented evidence about a time-stamp from the clerk's office of the Circuit Court for Prince George's County, which persuaded the judge that the motion was "received in the Circuit Court's box at 8:32 p.m., on November 3, 2014." In addition, the judge concluded (as Ms. Vess had conceded) that the orphans' court did

25

not receive the motion until three days later when it was stamped by the Register of Wills.  We accept those uncontested factual findings, which were by no means clearly erroneous.  *See In re Vy N.*, 131 Md. App. at 482.

Having made those findings, the circuit court judge reasoned that it was immaterial whether the *circuit court* had received Ms. Vess's post-judgment motion within the period for making a motion to the *orphans' court*.  According to the judge, Ms. Vess needed to file the post-judgment motion "with the Register of Wills, the Orphans' Court, not the Circuit Court[.]"  Consequently, the judge reaffirmed his conclusion that Ms. Vess failed to file a timely motion under Rule 2-534.

We see no fault in the circuit court's reasoning.  As Mr. Price observes in his brief, Ms. Vess delivered the motion on time but "to the wrong court."

Arguing that the circuit court erred, Ms. Vess cites *In re Vy N.*, 131 Md. App. 479 (2000), and *Molé v. Jutton*, 381 Md. 27 (2004).  She asserts that those two cases are "squarely on point."  We disagree.  Neither of those cases hold that a document is considered to be filed in one court on the day that it is received by a different court.

In the former case, this Court held that the district court erred by dismissing juvenile delinquency petitions on the ground that the petitions were "delivered to the Clerk's Office sometime after 4:30 p.m." on the last day that the documents were due, and "'stamped in'" on the following day.  *In re Vy N.*, 131 Md. App. at 481.  The district court found that "an employee of the Clerk's Office received the delinquency petitions" on the due date (*id.* at 486), after the office had closed for the day.  This Court explained: "When a pleading or other paper must be filed within a particular number of days, it can

26

be filed anytime before midnight on the last day provided that – if the Clerk's Office has closed – it is delivered to a judge or to an employee of the Clerk's Office who is authorized to accept delivery of such a document during the hours that the office is open to the public." *Id.* at 483. The Court held that, "because the delinquency petitions at issue were actually delivered to a person authorized to receive them" on the last day of the filing period, the petitions were considered to be "filed" on that day. *Id.* at 486.

In *Molé v. Jutton*, 381 Md. at 32-38, the Court of Appeals analyzed whether an appellant had filed a timely notice of appeal with the circuit court. On the morning when the notice of appeal was due, the postal service delivered the notice to the post office box that the clerk had designated as his mailing address, but the docket entry designated the notice as "filed" three days later. *Id.* at 37. The Court of Appeals approved of the proposition from *In re Vy N.*, 131 Md. App. at 484, that a "document is deemed 'received for filing' on the day that it is delivered to the judge or other authorized person." *Molé v. Jutton*, 381 Md. at 36 (quotation marks omitted). The Court reasoned that, "whether delivered by the Postal Service directly to the Clerk's Office or to a post office box, the mail is received, and therefore pleadings or papers filed, when the mail is delivered to the address designated by the Clerk." *Id.* at 38. The Court held that that the delivery of the notice of appeal "to the Post Office Box designated by the Clerk as his mailing address constitute[d] actual delivery of that notice[.]" *Id.*

In the present case, Ms. Vess produced credible evidence showing that her attorney delivered the motion to alter or amend the orphans' court's judgment to the circuit court on the night of November 3, 2014. But the clerk of the circuit court is

27

certainly not an "employee" (*In re Vy N.*, 131 Md. App. at 486) of the orphans' court or of a register of wills. Ms. Vess did not produce evidence that the orphans' court or the Register of Wills of Prince George's County had "authorized" the clerk of the circuit court to receive filings while the register's office was open or closed. *Cf. id.* at 483-84. Nor did she produce evidence that the Register of Wills of Prince George's County had "designated" the circuit court as a proper delivery address. *Cf. Molé v. Jutton*, 381 Md. at 38. The Register of Wills' acceptance of the document three days later, when a circuit court employee forwarded it to the orphans' court, does not establish that the circuit court had advance authorization to receive orphans' court filings.

In the absence of evidence that the clerk of the circuit court was authorized to receive filings on behalf of the orphans' court, we see no error in the conclusion that Ms. Vess failed to file the motion with the orphans' court in the time prescribed by Rule 2-534.[10]

Ms. Vess contends that, notwithstanding the untimeliness of her motion to alter or

---

[10] In her brief, Ms. Vess argues that the circuit court applied an incorrect standard in evaluating the evidence of the filing date. Observing that Mr. Price raised the timeliness issue in what he called a motion for summary judgment, she contends that the circuit court should have viewed all facts in the light most favorable to her. Under her new theory, the court was supposed to deny the motions, after two hearings on the subject, and then to hold a "trial where the [Register of Wills] c[ould] be called to testify." Her argument is not properly preserved, because she did not ask the circuit court to decide the issue under that standard, but instead asked the court to decide the issue in her favor as a matter of law. In any event, the response to the "summary judgment" motion did not include an affidavit from the Register of Wills or any proffer of what she might testify. The vague representations from Ms. Vess's attorney, that "regularly the night box is used for filings for all courts," do not create any genuine factual dispute about whether the Register of Wills had authorized the circuit court clerks to receive filings.

amend (and by extension the untimeliness of her appeal from the underlying judgment), the circuit court should not have dismissed her entire appeal. Because Ms. Vess filed her motion with the orphans' court more than 10 days after the entry of the order to transmit issues, but within 30 days after the entry of that order, her post-judgment motion was in substance a motion to revise the judgment under Md. Rule 2-535(a). She filed her notice of de novo appeal to the circuit court within 30 days after the denial of that motion.

The Court of Appeals has held that an orphans' court's order denying a motion to revise a judgment, where the motion was filed within 30 days of the judgment, may be an appealable order. *See Grimberg v. Marth*, 338 Md. 546, 551-52 (1995). However, "'[a]n appeal from the denial of a motion asking the court to exercise its revisory power is not necessarily the same as an appeal from the judgment itself.'" *Bennett v. State Dep't of Assessments & Taxation*, 171 Md. App. 197, 203 (2006) (quoting *Green v. Brooks*, 125 Md. App. 349, 362 (1999)); *see also Furda v. State*, 193 Md. App. 371, 377 n.1 (2010). The scope of review is "limited to whether the trial judge abused his [or her] discretion in declining to reconsider the judgment." *Grimberg*, 338 Md. at 553; *see Bennett*, 171 Md. App. at 203. It is hard to imagine a more deferential standard than this one. *See, e.g.*, *Stuples v. Baltimore City Police Dep't*, 119 Md. App. 221, 232 (1998) (explaining that the denial of a motion to revise a judgment should be reversed only if the decision "was *so far wrong* – to wit, *so egregiously wrong* – as to constitute a clear abuse of

discretion").[11]

A "de novo" appeal from an orphans' court's denial of a motion to revise its judgment is unusual, and perhaps even paradoxical. Generally, the circuit court treats a de novo appeal "as if it were a new proceeding and as if there had never been a prior hearing or judgment by the orphans' court." CJP § 12-502(a)(1)(iii). The relevant "judgment" here was not the underlying order to transmit issues, but the orphans' court's subsequent order declining to revise the order to transmit issues. At best, the de novo appeal from that order placed the circuit court in the same position as the orphans' court on the motion to revise the judgment under Rule 2-535(a).

Ms. Vess contends that both the orphans' court and the circuit court should have exercised their discretion to revise the order to transmit issues. She argues that the orphans' court should not have transmitted any issues because it should not have vacated the "order of default" against Mr. Price. Her argument is fatuous, because the orphans' court should never have *entered* the order in the first place.

By their terms, the orphans' court rules do not require a formal "answer," but only a "response to the petition." Md. Rule 6-122(b); *see* Md. Rule 6-433. Yet months before Ms. Vess ever requested the "order of default," Mr. Price had already filed a "response to the petition," in the form of a "verified answer," in which he denied specific allegations

[11] During the summary judgment hearing, the circuit court judge expressed incredulity that counsel for Ms. Vess would even attempt to appeal from the denial of a motion to revise: "And you're appealing from [the orphans' court's] denial of an untimely motion to alter or amend? Is that what you're telling me? And you want to go forward with that?"

30

and asserted that the decedent had properly executed the will, that two witnesses had properly attested the will, that the decedent had the requisite testamentary capacity when he made the will, and that the will had not been procured by fraud or undue influence. Hence, even assuming that the circuit court concept of "default" could somehow apply in an orphans' court proceeding,[12] Mr. Price was not in default when the orphans' court entered the "order of default." The only thing that put him in default was the misconceived order itself, which struck the answer that he had previously filed.

It is true that Mr. Price did not promptly respond to the substance of the petition to caveat after Ms. Vess's successful first appeal, when the circuit court reversed the orphans' court's dismissal of the petition because of questions about Ms. Vess's standing. The lack of a prompt response did not, however, hinder the parties' ability to formulate the joint petition to transmit issues or to engage in discovery. Mr. Price's failure to file a prompt response did not in any way justify the orphans' court in striking the substantive response that he eventually filed.[13]

---

[12] Ms. Vess was not really asking the orphans' court to "apply" Rule 2-613, the circuit court rule regarding defaults, so much as to adapt the rule. Rule 2-613 talks about plaintiffs seeking determinations of liability against defendants. But Ms. Vess was not a "plaintiff" seeking to determine Mr. Price's "liability." Nor was Mr. Price a "defendant."

[13] Even assuming that the "order of default" was somehow proper and that the orphans' court was required to evaluate Mr. Price's motion to vacate under Rule 2-613, Mr. Price did more than enough to state the basis for a meritorious defense. With a reply in support of his motion to vacate, Mr. Price submitted a copy of his answers to interrogatories, which included a detailed narrative about the preparation of the 2006 will. Given the information that was actually presented to the orphans' court, it was not an abuse of discretion to vacate the "order of default." *See Attorney Grievance Comm'n v. Ward*, 394 Md. 1, 20-22 (2006); *Holly Hall Publ'ns, Inc. v. Cnty. Banking & Trust Co.*,

Ms. Vess goes on to argue that her post-judgment motion to the orphans' court included a separate request to "amend, supplement or modify issues previously transmitted to a circuit court" under Rule 6-434(b). Specifically, her motion had asked to change the wording of two of the five issues, so that the jury would have the option to decide that the 2006 will was partially invalid as a result of fraud or undue influence. Ms. Vess contends that the denial of that motion is separately appealable as an order refusing to transmit issues. *See Russell v. Gaither*, 181 Md. App. 25, 28 n.2 (2008) ("an order refusing to transmit issues is an appealable final judgment") (citing *Nugent v. Wright*, 277 Md. 614, 616 (1976); *Banashak v. Wittstadt*, 167 Md. App. 627, 688 (2006)).

Even if we agreed that the denial of her Rule 6-434(b) motion is appealable, Ms. Vess has not identified any error in that ruling. Her briefs include no argument as to why she believes that the orphans' court and the circuit court were required to amend the issues to include the question of partial invalidity of the will. Therefore, we need not address the issue. *See Ochoa v. Dep't of Pub. Safety & Corr. Servs.*, 430 Md. 315, 328 (2013) ("arguments not presented in a brief or not presented with particularity will not be considered on appeal") (citation and quotation marks omitted).[14]

## II.     Propriety of the Order from the Civil Coordinating Judge

As a separate issue in her appeal from the circuit court, Ms. Vess contends that the

147 Md. App. 251, 260 (2002); *Bliss v. Wiatrowski*, 91 Md. App. 258, 270-71 (1999); *Drummond v. Drummond*, 91 Md. App. 630, 635 & n.4 (1992).

[14] In any event, both parties agreed during oral argument that the question of "partial invalidity" of the will was already subsumed into the two questions about whether the 2006 will had been procured by fraud or undue influence.

circuit court abused its discretion when it attempted (unsuccessfully) to schedule a trial in October 2016.

As previously mentioned, the circuit court entered a final judgment in the de novo appeal on November 10, 2015, by granting Mr. Price's dispositive motion and remanding the matter to the orphans' court. Ms. Vess moved for reconsideration within 10 days, and the court denied her motion on April 12, 2016.

On April 18, 2016, the circuit court's civil coordinating judge signed another order, which stated that the case needed to be "returned to [the circuit] court promptly for trial" and directed the orphans' court to "immediately" frame the issues so that the case would "stand for trial on October 3, 4, and 5, 2016 starting at 8:45 a.m. before any judge." The order was docketed on April 21, 2016.

Ms. Vess now raises an additional challenge to the propriety of the civil coordinating judge's order, but we are unconvinced that the issue is even open for appellate review. Although the order was filed as part of the de novo appeal in the circuit court, it was entered *after* the final judgment in the de novo appeal and the denial of reconsideration, which occurred on April 12, 2016. Generally, "[o]n an appeal from a final judgment, an interlocutory order *previously entered* in the action is open to review[.]" Md. Rule 8-131(d) (emphasis added). This rule, however, does not appear to permit review of an interlocutory order entered in the action *after* the final judgment. Furthermore, the civil coordinating judge's order does not appear to be appealable independently of the judgment in the de novo appeal: it does not have the attributes of a final judgment, nor does it fall into one of the few narrow categories of appealable

33

interlocutory orders. The civil coordinating judge did not adjudicate anything other than the collateral matter of how soon the case should be returned for trial.

Assuming for the sake of argument that the civil coordinating judge's order is somehow appealable, Ms. Vess contends that the "practical effect" of the order "would be to make this appeal moot before this Court has an opportunity to decide it." Because the order envisioned an October 2016 trial date, she asserts that it makes it "practically impossible" to exercise her right to obtain appellate review of the circuit court's judgment.

It is obvious that the civil coordinating judge's order did not have the effect that Ms. Vess feared. One week after the entry of that order, Ms. Vess noted this timely appeal from the circuit court's judgment. The civil coordinating judge's order did nothing to prevent this appeal from proceeding. When the scheduled trial date arrived, no trial occurred. The circuit court docket entry for October 4, 2016, reads: "Trial Moot[;] case appealed stayed[.]" As Ms. Vess concedes in her reply brief, the "trial date has come and gone."

Consequently, the issue of whether the circuit court somehow abused its discretion by attempting to have the case tried in October 2016 is now moot. *See, e.g., Voters Organized for the Integrity of City Elections v. Baltimore City Elections Bd.*, 451 Md. 377, 392-94 (2017). This Court does not sit to decide purely academic questions. *See, e.g., Cnty. Comm'rs of Charles Cnty. v. Sec'y of Health & Mental Hygiene*, 302 Md. 566, 568 (1985). We decline to do so here.

34

## I.      The Orphans' Court Order from April 20, 2016

Ms. Vess's separate appeal concerns developments in the orphans' court after it received the circuit court's instructions to "immediately frame the issues" for trial in October 2016.

The orphans' court attempted to comply with the remand instructions.  On April 20, 2016, the orphans' court entered a new "Order Transmitting Issues."  The order stated that the case was being "re-submitted for the trial scheduled" in October 2016.  The order transmitted five issues (the same issues from the October 22, 2014, order to transmit issues) to the circuit court for determination by a jury.

A week later, on April 28, 2016, Ms. Vess filed her notice of appeal from the circuit court to the Court of Special Appeals.  That notice of appeal gave rise to the appeal in *In the Estate of Howard Lewis Vess*, No. 372, Sept. Term 2016.  On the same day, Ms. Vess filed a line with the orphans' court, notifying that court of the appeal that she had just noted in the circuit court.  Citing CJP § 12-701(a)(1), Ms. Vess suggested that her appeal should "stay[] all proceedings in the orphans' court concerning the issue appealed."

On May 4, 2016, the Register of Wills filed a memorandum in the estate docket.  The Register asked the orphans' court judge to decide whether the Register "should still transmit the order framing issues" in light of the line filed by Ms. Vess.  The judge wrote the following comment in response: "do not transmit order."  The judge signed the memorandum and filed it in the estate docket.

Ms. Vess then filed a notice of a direct appeal from the orphans' court to the Court of Special Appeals. Her notice stated that she was appealing from the orphans' court order from April 20, 2016, which "re-submitted" five issues to the circuit court for trial. That notice gave rise to the appeal in *Claudia Vess v. Robert V. Price, Jr.*, No. 524, Sept. Term 2016.[15]

In this appeal, Ms. Vess asks this Court to declare the orphans' court's order of April 20, 2016, to be "void." Her brief presents the following question:

> Did the orphans' court abuse its discretion or err as a matter of law when it issued Orders transmitting certain Issues to the circuit court and granting Price's Motion to Vacate Order of Default while Claudia's appeal of an earlier Order transmitting the same Issues was pending before the circuit court and this Court?

Ms. Vess contends that the order was not "consistent with the automatic stay of proceedings" provided by CJP § 12-701(a)(1). That statute provides: "An appeal from an orphans' court or a circuit court stays all proceedings in the orphans' court concerning the issue appealed." She further argues, that even in the absence of an automatic stay, the order was not consistent with "the proper exercise of a trial court's jurisdiction *during the pendency of an appeal.*" (Emphasis added.) She argues that the order runs afoul of the principle that, "'during the pendency of an appeal,'" a trial court may not "'exercise its

---

[15] We are not entirely convinced that the order from April 20, 2016, was properly appealable. In general, an order transmitting issues is considered to be "final judgment of the orphans' court" under CJP § 12-501 and is therefore appealable. *See, e.g., Kao v. Hsai*, 309 Md. 366, 372 n.4 (1987). We are unaware of any case holding that an order to transmit issues is appealable as a "final judgment" when the orphans' court itself determines nothing, and it merely complies with remand instructions from the circuit court or an appellate court.

jurisdiction in a manner affecting the subject matter or justiciability of the appeal." *Brethren Mut. Ins. Co. v. Suchoza*, 212 Md. App. 43, 64 (2013) (quoting *Kent Island, LLC v. DiNapoli*, 430 Md. 348, 361 (2013)).

Ms. Vess's challenge to the order from April 20, 2016, is based on the incorrect assertion that an appeal was "pending," either with the circuit court or with the Court of Special Appeals, at the time the orphans' court entered that order. No appeal was pending as of that date. Ms. Vess's de novo appeal in the circuit court had ended on April 12, 2016; her further appeal, from the circuit court to this Court, did not start until April 28, 2016.

The circuit court rendered final judgment in Ms. Vess's de novo appeal at the hearing on Mr. Price's motion for summary judgment. At that hearing, the court announced in unequivocal terms that it was granting Mr. Price's dispositive motion, dismissing Ms. Vess's entire appeal, and denying all other pending motions. The court signed a document stating in unqualified language that it granted Mr. Price's motion and remanded the case to the orphans' court. The clerk docketed the judgment on November 10, 2015. Ms. Vess filed a timely motion to alter or amend that judgment, which the circuit court denied in an order entered on April 12, 2016.

Thus, as of April 12, 2016, Ms. Vess's de novo appeal (Case No. CAL 15-08368 in the Circuit Court for Prince George's County) was no longer pending before the circuit court. Because there was no longer "[a]n appeal from an orphans' court or a circuit court" on that date, it follows that there was no longer a stay of "all proceedings in the orphans' court concerning the issue appealed" under CJP § 12-701(a)(1). The orphans'

court had regained the authority to enter appropriate orders in the caveat proceedings, including orders concerning the issues that had previously been appealed. The orphans' court's order of April 20, 2016, did not improperly affect "the subject matter or the justiciability of the appeal"; it honored the terms of the circuit court's final judgment in the de novo appeal.

One week later, on April 28, 2016, Ms. Vess did commence another appeal (No. 372, Sept. Term 2016 in the Court of Special Appeals), by filing a notice of appeal in the circuit court. The filing of her notice triggered a new stay of orphans' court proceedings under CJP § 12-701(a)(1). Once Ms. Vess had notified the orphans' court of her appeal from the circuit court to this Court, the orphans' court specifically directed the Register of Wills not to formally transmit issues. The orphans' court memorandum, filed on May 4, 2016, effectively ensured that the Register of Wills would not send the case for trial during the pendency of Ms. Vess's appeal to this Court. In fact, no trial occurred during October 2016.

We do not fault the orphans' court for obeying the circuit court's instructions to "immediately" send the case back for a prompt trial. Practically speaking, the orphans' court could have delayed that action until the expiration of all time periods for seeking further appellate review. But neither CJP § 12-701(a)(1) nor any other legal principle invoked by Ms. Vess required the orphans' court to do so.

Mr. Price argues that Ms. Vess's appeal from the orphans' court order of April 20, 2016, is moot, because it was "abrogated or nullified" by other decisions, or that it is "already substantively involved" in her other appeal from the circuit court. Although Ms.

38

Vess has not persuaded us that there is any error in the order, we choose to dismiss her appeal from that order as moot.

Affirming, reversing, or vacating that order would be a meaningless gesture under the circumstances. The orphans' court's prompt directions to the Register of Wills on May 4, 2016, already achieved the result that Ms. Vess claims to seek. As Ms. Vess describes it in her brief, the efforts to promptly send the case to trial "came to naught" because the Register of Wills "allowed time for [her] appeal before formally transmitting issues" to the circuit court. Because the orphans' court had "effectively granted" a stay of the transmission of issues even before Ms. Vess noted her appeal in the orphans' court, "there is no relief for us to grant" with respect to the order of April 20, 2016. *In re W.Y.*, 228 Md. App. 596, 609 (2016).

The appeal from the orphans' court order from April 20, 2016, is dismissed as moot under Md. Rule 8-602(a)(10).

### B.    The Orphans' Court Order of September 28, 2016

Although Ms. Vess noted her appeal in the orphans' court on May 20, 2016, she also seeks to challenge an order entered by that court several months later, on September 28, 2016.[16] Her challenge is not properly before us.

---

[16] Her brief phrased the question as: "Whether the orphans' court's September 28, 2016 Order granting Price's Motion to Vacate Order of Default, and this Court's eventual vacation of that Order, requires the Court to reverse the judgment of the circuit court in First Related Appeal?" The ultimate target of her argument regarding the order from September 28, 2016, is not even a decision of the orphans' court. Through an elaborate chain of reasoning, she seeks to use her appeal from the orphans' court order as a basis for overturning the *circuit court*'s judgment, which was the subject of her other appeal.

39

The order at issue was nothing more than additional written documentation of an interlocutory order that had been entered nearly two years earlier. In connection with the hearing on October 22, 2014, the orphans' court vacated the "order of default" that it had previously entered against Mr. Price. The judge signed and filed a handwritten "daily sheet" on that date, which stated that the court had granted Price's motion to vacate the order of default. The clerk made a docket entry stating that his motion to vacate the order of default had been "GRANTED." The court then filed and docketed the separate, typewritten order transmitting issues.

No additional steps were necessary to give effect to the order vacating the "order of default." The rule governing entry of orders or judgments in the orphans' court provides: "After determination of an issue, . . . the court shall direct the entry of an appropriate order or judgment." Md. Rule 6-171(a). Rule 6-171(a) does not require that each order be set forth on its own separate document. Instead, "in orphans' courts, an order is a paper writing that is filed in the estate file." *Anthony v. Clark*, 335 Md. at 594. The hearing sheet clearly stated that the motion had been granted, it included the judge's signature, it was filed in the estate docket, and it was properly docketed by the Register of Wills. The orphans' court did more than enough to achieve the entry of that interlocutory order. *See id.* at 592 (holding that a docket entry in the orphans' court need not summarize the contents of the order but need only show that an order was filed).

Nevertheless, on September 28, 2016 (for reasons that are not apparent from the record), the orphans' court signed and entered the separate, typewritten document giving additional confirmation of its order vacating the order. The document stated: "Pursuant

40

to the Court's findings at the hearing held on October 22, 2014, . . . Caveatee Robert Price's Motion to Vacate Order of Default . . . is hereby GRANTED." The document was entirely superfluous, because the Register of Wills had already documented the decision to the same effect nearly two years earlier.

Ms. Vess contends that the September 28, 2016, order was improper because it concerned the subject matter of her two pending appeals to this Court. Regardless of the potential merits of her argument, her May 20, 2016, notice of appeal does not permit this Court to review an order from September 28, 2016. As Ms. Vess concedes, the order from September 28, 2016, is at most an interlocutory order that is not appealable on its own. Even if that order were somehow appealable, Ms. Vess did not file a notice of appeal within 30 days *after* the entry of that order.

In general, "[o]n an appeal from a final judgment, an interlocutory order *previously entered* in the action is open to review" by the appellate court. Md. Rule 8-131(d) (emphasis added). On an appeal from an appealable interlocutory order, previously entered orders may be challenged "to the extent [that] such *previous rulings* directly control and are inextricably bound to the order that is treated as final for purposes of appeal[.]" *Davis v. Attorney Gen.*, 187 Md. App. 110, 123 (2009) (citing *Snowden v. Baltimore Gas & Elec. Co.*, 300 Md. 555, 560 n.2 (1984)) (emphasis added).

Citing the language from *Davis v. Attorney General*, Ms. Vess theorizes that her appeal from the order of April 20, 2016, carries with it the right to seek review of the interlocutory order entered on September 28, 2016. Her argument is doubly flawed. First, she omits the requirement that the review encompasses "previous rulings." An

41

order signed and entered five months after the order under review is not a "previous ruling[]." Second, she misconstrues what it means, in this context, for a prior ruling to "directly control" and to be "inextricably bound" to a later ruling. The correctness of the order from April 20, 2016, does not depend on the correctness of a decision made five months later.

Because Ms. Vess's appeal from the order entered by the orphans' court on September 28, 2016, is "not allowed by [the Maryland R]ules or other law" (Md. Rule 8-602(a)(1)), we must dismiss the appeal to the extent that it challenges that order. [17]

<u>CONCLUSION</u>

In *In the Estate of Howard Lewis Vess*, No. 372, Sept. Term 2016, we affirm the judgment of the circuit court in the de novo appeal, as well as the order denying reconsideration of that judgment. The circuit court correctly concluded that Ms. Vess failed to note a timely appeal from the order to transmit issues. Moreover, because the orphans' court did not err or abuse its discretion when it vacated the "order of default," the circuit court was not required to revise the orphans' court's orders. The appeal is

_____

[17] Before we conclude, we must address one remaining loose end. Throughout her various briefs, Ms. Vess repeatedly advances a theory that an orphans' court has no "jurisdiction" to transmit issues to the circuit court unless a party has filed a formal answer denying allegations from a petition. Even if her theory were correct, that requirement has already been satisfied. Mr. Price filed an answer denying the allegations from her caveat petition. The orphans' court temporarily struck his answer when it entered the "order of default" on May 19, 2014. But on October 22, 2014, the orphans' court granted Mr. Price's motion to vacate, which included his request that the orphans' court "[a]ccept for filing the Answer to Petition to Caveat." In effect, the orphans' court reinstated his answer at the same time that it transmitted issues.

dismissed as moot to the extent that it challenges the order from the civil coordinating judge that was entered on April 21, 2016.

The appeal in *Claudia Vess v. Robert V. Price, Jr.*, No. 524, Sept. Term 2016, is dismissed. The appeal is moot to the extent that it challenges the orphans' court order that "re-submitted" the issues to the circuit court on April 20, 2016. On an appeal from that order, the order subsequently entered on September 28, 2016, is not open for review.

With the cooperation of the orphans' court, the circuit court shall proceed to a trial on the issues as framed by the order entered on October 22, 2014.

**IN CASE NO. 372, SEPT. TERM 2016, THE JUDGMENT ENTERED BY THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY ON NOVEMBER 10, 2015, AND THE ORDER ENTERED ON APRIL 12, 2016, ARE AFFIRMED. APPEAL DISMISSED AS TO THE ORDER ENTERED ON APRIL 21, 2016. APPELLANT TO PAY COSTS.**

**APPEAL DISMISSED IN CASE NO. 524, SEPT. TERM 2016. APPELLANT TO PAY COSTS.**